IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Xunhui Cheng and Kelin Cai, on behalf of, himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Dan Liu et al.,<br><br>Defendants. | Case No.: 4:20-cv-01726-JD<br><br><br><br>**ORDER** |

This case involves an alleged complex fraudulent investment scheme perpetrated by the named Defendants[1] primarily in the People's Republic of China ("PRC") between 2013 and 2016, by which it is alleged the equivalent of several billion United States Dollars were defrauded from Chinese investors and were used, among other things, to purchase approximately two dozen golf courses and various other real estate in South Carolina for the benefit of Defendants. Plaintiffs Xunhui Cheng ("Cheng") and Kelin Cai ("Cai"), on behalf of himself and all others similarly situated were among the investors who were defrauded. Plaintiffs allege Defendants perpetrated "a 'Ponzi Scheme' that utilized incoming investment funds received in exchange for new investment contracts sold [] to fund payments owed to existing investors, and also to fund the high current operating costs of the Company, including the highly compensated sales staff and senior management team, led by Defendant Dan Liu and Xue Xuili." (DE 156-1, p. 4.)

---

[1] Defendants are Founders Group International, LLC; Founders National Golf, LLC; Founders Aberdeen, LLC; Founders Development, LLC; Founders BRGC, LLC; Founders GCC,LLC; Founders Golf Management, LLC; Founders IWGC, LLC; Founders RHGC, LLC; Founders Tradition, LLC; Founders Wild Wing, LLC; Atlantic Development Company, LLC; Atlantic Coast Funding, LLC; Wild Wing Land and Development, LLC; Offshore Captain, LLC; D & C International Holdings, LLC; Founders Blue Water, LLC; and Founders Events, LLC (the "Entity Defendants") along with Dan Liu (collectively, "Defendants").

1

Before the Court are three motions by the Plaintiffs: (1) Plaintiffs' Motion for a Protective Order (DE 132); (2) Plaintiffs' Motion to Compel answers to interrogatories and requests for production (DE 142); and (3) Plaintiffs' Motion to Certify Class (DE 156). The parties have briefed the motions; and therefore, the motions are ripe for review and decision. After reviewing the motions and memoranda submitted, the Court grants Plaintiffs' Motion for a Protective Order (DE 132); denies Plaintiffs' Motion to Compel (DE 142); and denies Plaintiffs' Motion to Certify Class (DE 156) for the reasons stated herein.

## BACKGROUND

Plaintiffs allege the following in support of the complaint. Starting in 2013, Defendant Dan Liu ("Liu") established multiple corporations in China ("Chinese LLCs"). (DE 18, ¶ 30-1.) These Chinese LLCs solicited thousands of Chinese nationals, including Plaintiffs, to invest in investment agreements.[2] (DE 18 ¶ 27, 30-3.) Liu then created multiple corporations in South Carolina ("South Carolina LLCs"). (DE 18, ¶ 30.) In late 2014, Liu purportedly sought approval from the Chinese government to transfer "more than $800 Million USD to USA for purchase of golf course[s] and real estate assets" with funds from the investment agreements.[3] (DE 18, ¶ 30-9.) Once approved, "Plaintiffs' investment proceeds were deposited into Dan Liu's private bank account and transferred into the other Co-Defendants' accounts." (DE 18, ¶ 97.) The South Carolina LLCs have now purchased multiple properties in South Carolina, including multiple golf

---

[2]  Plaintiffs have included a document titled Lending Agreement with their Complaint. Plaintiffs, however, refer to the document in the Complaint as an investment agreement. (DE 18, p. 14.) Thus, at this stage, this Court will refer to it as such.

[3]  Plaintiffs contend between June 2015 and September 2016, Defendants, through the Chinese LLCs, collected as much as $800,000,000 from thousands of Chinese citizens including Plaintiffs. (DE 18, ¶ 30-55.)

2

courses and ocean front properties.[4] (DE 18, ¶ 20, 23, 37.) Defendant Dan Liu is the owner of the South Carolina LLCs, but the Chinese LLCs are now defunct. (DE 18, ¶ 133, 44.)

Plaintiff Kelin Cai invested 150,000 CNY (approximately $21,500 USD) in the Chinese LLCs by contract dated September 30, 2015, and an additional 310,000 CNY (approximately $44,500 USD) through a second contract dated March 18, 2016. Plaintiff Xun Hui Cheng invested a total of 1,000,000 CNY (approximately $143,000 USD) in the Chinese LLCs on or about January 14, 2016, through two contracts on that date. Upon information and belief, the total funds raised by the Chinese LLCs from its investors worldwide between July 2013 and April 2016, was in excess of $1 Billion USD ($1,000,000,000 USD) and may have been as much as $2 Billion USD ($2,000,000,000 USD). Upon information and belief, there were approximately 95,067 Chinese citizens who invested in the Chinese LLCs, a fact corroborated in multiple locations in the trial transcript of Xue's criminal trial in the PRC. (See DE 156-2, pp. 4, 99; see also, DE 146-4, Sub-Exhibit 44, pp. 1-2.)

Putative Class Plaintiff Xunhui Cheng is a Chinese national residing in the Zhejiang province. He is a businessman who runs a company, Ling Pao Textile Company, which exports outdoor gear and equipment to the U.S. where the products are sold in stores such as "Costco" and "Sam's Club." (DE 156-5, pp. 9-11.) Mr. Cheng is a self-proclaimed conservative investor and has testified he is "not the kind of people" to invest in speculative investments, but that he invested in Yiqian as a favor to a friend who was a salesman for the Company and was trying to boost his performance. (Id. at p. 84.) Cheng's friend, who was working as a salesman for Yiqian, told Cheng that the investment was "very safe" and that he could "relax" because "nothing bad would

---

[4] Plaintiffs contend, Defendant Liu, through Founders Group International, has purchased 22 area golf courses along with 29.1 acres of Myrtle Beach oceanfront property from Grand Dunes owner LStar Communities with money obtained from investors in China including the Plaintiffs. (DE 18, ¶ 37.)

happen" if Cheng invested in Yiqian. (Id. at p. 84.) Cheng testified in his deposition that he visited the Nanjing offices of Yiqian twice and that, while there, he noticed photos on the walls with Yiqian managers posing with various high-ranking officials of the Chinese government, which he interpreted as an effort by the Company to aid in collecting money from "the mass[es]," its investors. (Id. at p. 86.) Cheng invested approximately 1,000,000 CNY (approximately $143,000 USD) on two 500,000 CNY contracts on January 14, 2016. He had previously invested 1,000,000 CNY in a Yiqian contract that was paid back to him, although the payment was delayed. (Id. at pp. 42, 43.) One of the January 14, 2016, contracts had a six-month term, and the other had a one-year term. Cheng has never received any repayment, of any amount, of the 1,000,000 CNY he paid to Yiqian in connection with the two January 14, 2016, contracts. (Id.)

Putative Class Plaintiff Kelin Cai is a professional poet who immigrated to the U.S. from China on a special talent visa in 2013. Mr. Cai testified that he lived in the "Huaxia Plaza" building in Nanjing, China, where Yiqian and the Defendant Dan Liu also maintained offices. Mr. Cai testified that he would routinely run into Yiqian personnel and sales agents coming in and out of his building in Nanjing, and that they frequently came to him "for business" and "asking for money." (DE 159-15, pp. 18, 46-47.) Cai invested 150,000 CNY (approximately $21,500 USD) in the Easy Richness Entities by contract dated September 30, 2015, and an additional 310,000 CNY (approximately $44,500 USD) through a second contract dated March 18, 2016, for a total investment in the Yiqian Company in the amount of 460,000, CNY (approximately $67,000 USD). As with Xunhui Cheng, Plaintiff Cai testified that he was subjected to high-pressure sales tactics from Yiqian "Easy Richness" sales staff who he would see in his building in Nanjing and was persuaded by their assurances of the security and the relatively high-interest returns promised on the investment. (Id. at pp. 111.) Cai came to Myrtle Beach, South Carolina, in March of 2017,

4

and met with Dan Liu in an effort to recoup his investment in the Yiqian Company. During that meeting, Dan Liu acknowledged Plaintiff Cai's Yiqian investment, promised to repay Cai's investment, and even collected Mr. Cai's bank account information for the ostensible purpose of wiring funds back to Cai. However, after the March 5, 2017 meeting, no payments to Cai from Lui or any of the other Defendants ever occurred. (Id. at pp. 17-18, 31.)

## LEGAL STANDARD

**Protective Orders/ Motion to Compel**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether discovery is proportional to the needs of the case, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

"[A] district court has wide latitude in controlling discovery and [its] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 682 (4th Cir. 1986) (citations omitted). "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." Id. (citations omitted). To that end, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c).

The court has discretion in fashioning this relief, and Federal Rule of Civil Procedure 26(c)(1)(C) specifically authorizes the court to "prescrib[e] a discovery method other than the one selected by the party seeking discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(C)

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Oppenheimer v. Episcopal Communicators, Inc., No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); See Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., No. 2:17-CV-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" Gilmore v. Jones, No. 3:18-CV-00017, 2021 WL 68684, *3-4 (W.D. Va. Jan. 8, 2021) (quoting Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court.").

**Class Certification**

A class action is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Reinig v. RBS Citizens, N.A., 912 F.3d 115, 123 (quoting Walmart Stores, Inc. v. Dukes, 564 U.S. 338 (2011). The prerequisites for a class action are established by Rule 23(a) of the Federal Rules of Civil Procedure, which states, as follows:

> Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four aforementioned prerequisites are referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." Fisher v. United States, 501 F.Supp.3d 362, 364 (D.S.C. 2020). "In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). Rule 23(b)(3), Fed. R. Civ. P., requires that common, not individual, questions predominate and that class treatment is superior to other forms of adjudication. "Certification under Rule 23(b)(3) is proper where 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,' and, to resolve the case, 'a class action is superior to other methods available.'" Fisher, 501 F.Supp.3d at 364 (citing Fed. R. Civ. P. 23(b)). Although it is similar to the commonality requirement under Rule 23(a), the predominance requirement "is far more demanding." Jenkins v. White Castle Mgmt. Co., 2015 U.S. Dist. LEXIS 22241, 2015 WL 832409, *7 (N.D. Ill. Feb. 25, 2015). "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." White Castle, 2015

7

U.S. Dist. LEXIS 22241 *7 (quoting Messner v. Northshore Univ. Healthsystem, 669 F.3d 802, 814 (7th Cir. 2012)).

The class must also be "sufficiently definite that its members are ascertainable." Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 493 (7th Cir. 2012). Although this does not mean that every member of a class needs to be identified at the time of certification, "there must be an 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." Katz v. Capital Med. Educ., LLC, 2021 U.S. Dist. LEXIS 147830, 2021 WL 3472809 *12-13 (D.S.C. Aug. 6, 2021) (quoting Krakauer v. Dish Network, LLC, 925 F.3d 643, 658 (4th Cir. 2019)). Plaintiffs must establish each Rule 23, Fed. R. Civ. P., element "by a preponderance of the evidence." Messner, 669 F.3d at 811. If one of the requirements necessary for class certification is not met, the effort to certify a class must fail. See Clark v. Experian Information Solutions, Inc., 2001 U.S. Dist. LEXIS 20024, 2001 WL 1946329, at *4 (D.S.C. March 19, 2001) (citing Harriston v. Chicago Tribune Co., 992 F.2d 697, 705 (7th Cir. 1993)). The court must go beyond the pleadings, take a "'close look' at relevant matters," conduct "a 'rigorous analysis' of such matters," and make "'findings' that the requirements of Rule 23 have been satisfied." See Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004) (internal and external citations omitted). While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits," id. at 366 (citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)), "sometimes it may be necessary for the district court to probe behind the pleadings before coming to rest on the certification question." Id. (citing Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

## **DISCUSSION**

**Motion for Protective Order**

Plaintiffs seek a protective order related to certain questions asked at the August 25, 2022, deposition of Plaintiff Xunhui Cheng ("Plaintiff Cheng") to which Plaintiffs' counsel objected and instructed Plaintiff Cheng not to answer on the basis of attorney-client privilege. The questions that Plaintiffs' counsel instructed Plaintiff Cheng not to answer fall into two categories: (1) questions about facts relevant to Plaintiffs' delay in filing this action, which appear to implicate communications between Plaintiff Cheng and South Carolina attorney Reese Boyd; and (2) communications between Plaintiff Cheng and lawyers in China. Entity Defendants do not challenge the privilege objections asserted to the extent they involve communications between Plaintiff Cheng and Mr. Boyd for purposes of providing legal advice. However, Entity Defendants challenge Plaintiff Cheng's refusal to testify regarding facts pertinent to statute of limitations issues. (DE 135, p. 2.) To the extent these questions invade the attorney-client privilege, the Court grants the protective order, and the Court declines to get into the timeliness of the filing of Plaintiffs' action under these circumstances.

In addition, with respect to communications between Plaintiff Cheng and lawyers in China, Entity Defendants contend Chinese law should apply in determining whether the communications are protected from disclosure, and Chinese law does not recognize an attorney-client privilege. In this regard, Plaintiffs filed an Affidavit of Attorney Edward Lehman ("Lehman") that states (a) Lehman was part of the legal team who had filed this lawsuit in South Carolina and was acting pursuant to their instructions; (b) Lehman was acting as a translator because Plaintiffs' counsel do not speak Chinese; and (c) Lehman was acting as a duly licensed foreign lawyer registered as a foreign lawyer in China which subjects him to confidentiality requirements. (DE 137, p. 1.)

9

Lehman is a United States educated and licensed lawyer (also licensed in China) who had conversations with Cheng about this case, and these communications are privileged as a matter of law. Since "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case," Plaintiffs are entitled to a protective order as to all privileged communications with Mr. Boyd and Mr. Lehmen. See Fed. R. Civ. P. 26(b)(1) (emphasis added).

**Motion to Compel**

Plaintiffs ask this Court to compel Defendant Liu to show all bank records and other records as to how the subject money was collected in China and given to Liu to purchase the golf courses. (DE 142-1, p. 6.) The Court notes Defendant Liu answered the Interrogatories and Requests for Production that are identified in Plaintiffs' Memorandum in Support of the Motion to Compel. (See DE142-1, pp. 3-6.) Although some of the responses begin with an objection to the specific request, Defendant Liu goes on to provide responses. For example, in Request for Production numbers 5, 7, and 8, Plaintiffs do not request documents or tangible items as permitted by Rule 34, Fed. R. Civ. P. Instead, they ask for lists of information. As a result, Defendant Liu objected to each request as not a proper request for production, but then provided the names of the banks with whom had had accounts during the time periods identified in the requests.

As to the specific information that is the subject of this motion to compel - where the funds came from to purchase the golf courses - on October 6, 2022, Plaintiffs' counsel took the deposition of Defendant Liu. During the course of the deposition, Plaintiffs' counsel questioned Defendant Liu extensively regarding the source of the funds used to buy the golf courses. Mr. Liu explained that some of the funds were his personal funds while other funds were borrowed from a friend named Zheng Huan. Liu further explained that the funds went into his personal bank account at

China Merchants Bank, as previously identified in response to Interrogatory No. 4 that is the subject of this Motion. Mr. Liu also confirmed that he does not have the bank records for these transactions in China, which date back more than five years to 2014-2017. He also confirmed that he does not have access to the bank accounts that he had in China before moving to the United States. (See DE 161-2, pp. 96-99.) Therefore, Defendant Liu adequately answered discovery requests regarding where the funds came from to purchase the golf courses, and the Court denies the motion to compel.[5]

**Class Certification**

Plaintiffs seek class certification in this case asking this Court to certify a 1) Constructive Class, 2) a Cai Subclass, and 3) a Cheng Subclass, and to appoint Gene M. Connell, Jr., Reese Boyd and Anthony Scordo as class counsel. (DE 156, p. 1-2.) Plaintiffs contend that they meet the four requirements of Rule 23(a) (i.e., numerosity[6], commonality, typicality, and adequacy of representation) and they propose the following class definitions:

> SUBCLASS I: RECEIVER/CONSTRUCTIVE TRUST
>
> Any investor who loaned money by way of standard contract to the "Easy Richness Companies" (Nanjing Easy Richness Financial Information Consulting Co., Ltd.; Jiangsu Easy Richness Asset Management Co., Ltd.; Jiangsu Easy Richness Haitian Equity Investment and Fund Management Co., Ltd.; and Jiangsu Easy Richness Founders Real Estate Co., Ltd.) and whose funds were used to purchase golf courses in Horry County, South Carolina, or were used to repay investors whose funds had already been used to purchase golf courses in Horry County, South Carolina, and who had not received full restitution by the Chinese Courts. The Subclass would include only a claim for monies that have not been repaid through restitution as ordered by a Chinese Court.
>
> SUBCLASS II: THE CHENG SUBCLASS

---

[5] Plaintiffs further ask the Court to require Defendant Liu to conform the interrogatory answers to his testimony given at his deposition on October 6, 2022, during which he testified Zheng Huan loaned him the money. However, the Court declines to do so given Plaintiffs' right to impeach any inconsistent testimony of Liu at trial.

[6] Defendants do not challenge the numerosity requirement of Rule 23(a)(1) as Plaintiffs have estimated the proposed class contains tens of thousands of class members.

> Any investor who loaned money to the "Easy Richness Companies" (Nanjing Easy Richness Financial Information Consulting Co., Ltd.; Jiangsu Easy Richness Asset Management Co., Ltd.; Jiangsu Easy Richness Haitian Equity Investment and Fund Management Co., Ltd.; and Jiangsu Easy Richness Founders Real Estate Co., Ltd.) and whose funds were used to purchase golf courses in Horry County, South Carolina, or were used to repay investors who had previously invested in golf courses in Horry County, South Carolina and who signed a power of attorney authorizing Cheng to be their agent for this litigation. The Class would include only a claim for monies that have not been repaid through restitution as ordered by a Chinese Court. Any Subclass Member agrees not to hereafter pursue any claims in China against Dan Liu or his related companies (the "Easy Richness Companies") concerning the claims made in this litigation.
>
> SUBCLASS III: THE CAI SUBCLASS
>
> Any investor, person, partnership, corporation or Ltd who loaned money by way of a standard contract to the "Easy Richness Companies" (Nanjing Easy Richness Financial Information Consulting Co., Ltd.; Jiangsu Easy Richness Asset Management Co., Ltd.; Jiangsu Easy Richness Haitian Equity Investment and Fund Management Co., Ltd.; and Jiangsu Easy Richness Founders Real Estate Co., Ltd.) and whose funds were used to either purchase golf courses in Horry County, South Carolina; or the funds were used to repay previous investors who had previously invested in golf courses in Horry County, South Carolina. The Subclass would include only a claim for monies that have not been repaid through restitution as ordered by a Chinese Court. Any Subclass Member agrees not to hereafter pursue any claims in China against Dan Liu or his related companies (the "Easy Richness Companies") concerning the claims made in this litigation.

(DE 156-1, p. 15-16.) Defendants oppose Plaintiffs' class certification request because they contend Plaintiffs do not meet the requirements of Rule 23(a) or (b). For instance, Defendants argue Plaintiffs do not meet the Rule 23(a) requirements of commonality or typicality. This Court agrees. As recognized by the United States Supreme Court, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," and "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, n.5 (2011).

In order for a class to be certified, Plaintiffs must prove that "there are questions of law or

12

fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." EQT Prod., 764 F.3d at 360 (quoting Dukes, 564 U.S. at 350). While "[a] single common question will suffice" to meet this requirement, "it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (quoting Dukes, 564 U.S. at 350). "The threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." Brown v. Nucor Corp., 576 F.3d 149, 153 (4th Cir. 2009). "A question is not common, by contrast, if its resolution 'turns on a consideration of the individual circumstances of each class member.'" Thorn v. Jefferson–Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

Although Plaintiffs' motion claims that they entered form contracts with Defendants and invested money into an alleged Ponzi scheme to invest in Myrtle Beach golf courses, their motion does not identify any common questions or issues to the class as a whole that they contend "will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. Rather, Plaintiffs assert damages because they were not paid in full on certain contracts, but each admits to prior contracts in which they received full payment of principal and interest. For example, Wei Ma testified that she was paid in full on some contracts, and on others she was paid interest for all or part of the term of the contract; additionally, she testified she recently received restitution in the amount of 186,168.34 yuan. (DE 172-2, pp. 6-9.) Plaintiff Cai testified that he burned the contracts on which he was paid in full. (DE 172, p. 38 (citing Cai Dep. 101:13–18).) If the investment was a Ponzi scheme, then the money they received in payment on the prior contracts is subject to disgorgement to the investors who funded those payments. This

13

requires an individualized analysis for each putative class member to determine the existence of each contract and the terms and timing of each payment compared to the timing of the investments of other putative class members, which could be numerous.

Furthermore, the Court finds that Plaintiffs fail to meet the typicality requirement under Rule 23(a). Rule 23(a) requires Plaintiffs to prove that their claims and defenses "are typical of the claims or defenses of the class[.]" Defendants have raised a statute of limitations defense, which may render Plaintiffs' claims atypical of other class members without statute of limitations issues. Defendants allege Plaintiff Cheng, knew he had a cause of action in July 2016. He engaged a lawyer then to demand payment on the investment at issue in this lawsuit. (See DE 172, p. 43, citing Cheng Dep. 74:19–77:24.) At that time, the companies with which he had invested had a "case set up" with the police and had "stopped paying everyone[;]" thereafter, he knew his rights had been violated. (See DE 172, p. 43 citing id. at 83:8–22.) Nevertheless, Plaintiffs filed this action on March 12, 2020, more than three years after Plaintiff Cheng was *purportedly* aware of facts and circumstances that would "put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist." Maher v. Tietex Corp., 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct. App. 1998); see also Wellin v. Wellin, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *3 (D.S.C. Jan. 22, 2014) (recognizing three-year statute of limitations under South Carolina law for causes of action that include violation of the state securities act, breach of contract, breach of fiduciary duty, fraud, and unjust enrichment). In sum, Plaintiffs' claims are not typical of putative class members that may not have the same statute of limitations issues.

Accordingly, Plaintiffs have not met the Rule 23(a) requirements for class certification, and therefore, the Court declines to address the other requirements of Rule 23(a).

**Federal Rule of Civil Procedure 23(b)(3)**

Even if Plaintiffs could satisfy all the requirements of Rule 23(a), Defendants contend Plaintiffs cannot satisfy the provisions of Rule 23(b), Fed. R. Civ. P.[7] This Court agrees. "A putative class satisfies Rule 23(b)(2) if '[1] the party opposing the class has acted on grounds generally applicable to the class, [2] thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" Thorn, 445 F.3d at 329 (citation omitted). In this case, Plaintiffs' claims for monetary relief predominate, and Plaintiffs plainly seek individualized awards of damages for themselves and other putative class members based on the amount each individual is allegedly owed by the Easy Richness companies pursuant to their individual investment agreements.[8] Accordingly, class certification under Rule 23(b)(2) is improper here because the predominant relief sought is individualized.

However, "certification under Rule 23(b)(3) is appropriate when all of the prerequisites of Rule 23(a) are satisfied and two other requirements are met. Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." EQT Prod. Co. v. Adair, 764 F.3d at 357 (internal citation omitted), "It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." Id. at 358. With these

---

[7] In this case, the putative class of plaintiffs rely on Rules 23(b)(2) and 23(b)(3) to meet this requirement; therefore, the Court will not address Rule 23(b)(1) in its analysis.

[8] For instance, the Amended Complaint includes claims for breach of contract, fraud, breach of contract accompanied by fraudulent act, state securities violations, and conversion—all seeking individualized monetary damages. The Amended Complaint also includes equitable claims for unjust enrichment and constructive trust, both of which seek monetary relief. Plaintiffs propose three subclasses, each of which contains this criterion: "The Class [or Subclass] would include only a claim for monies that have not been repaid through restitution as ordered by a Chinese Court." (DE 156-1, pp. 15–16.)

guideposts, Defendants argue Plaintiffs fail to meet their burden to prove that the class action is superior to other methods of adjudicating the dispute. (DE 172, p.11.) This Court agrees. Rule 23(b)(3) includes a non-exhaustive list of factors to consider in determining whether the Rule 23(b)(3) requirements of predominance and superiority have been met, to include: "(A) Class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun; (C) the desirability or undesirability of concentrating the litigation in this forum ['desirability']; (D) the likely difficulties in managing a class action ['manageability']. Fed. R. Civ. P. 23(b)(3).

Here, this case is about events that happened in China to Plaintiffs whose claims are governed by Chinese law and who are receiving restitution from the Chinese government. As such, this Court finds that it is not desirable to aggregate Plaintiffs' claims in this jurisdiction, and the action would be unmanageable in this Court if the claims were aggregated.[9] Significantly, Plaintiffs have not met their burden of proving that Chinese courts are more likely than not to recognize the res judicata effect of a class action judgment in the United States. China is the locus of this entire lawsuit, and it would not be desirable or manageable to aggregate the claims in this Court, for many reasons.[10] The "issue of manageability of a proposed class action is always a

---

[9] On reply, Plaintiffs' contend the equitable remedy of constructive trust warrants the application of the laws of the situs of where the property was transferred, i.e. South Carolina. (DE 191, p. 5.) However, the Court is not persuaded, especially in view of the fact that preliminarily, the Hague Convention would need to be followed to even access a database where the identities of all of the investors may be found. There is nothing in the record to indicate the PRC government would be cooperative in this endeavor.

[10] For instance, one of the two class representatives and all but one of the 95,000 putative class members are alleged to be Chinese citizens and residents; both class representatives and all of the putative class members entered into peer-to-peer lending contracts in China; the peer-to-peer lending contracts (also referred to as investment contracts) were with Chinese companies that are not parties to this lawsuit, and Defendants were not owners, shareholders, officers, or employees of the Chinese companies that were parties to the lending contracts; the peer-to-peer lending contracts entered into in China contain a forum selection clause that requires resolution of the dispute in China; Chinese law applies to the claims of Plaintiffs and the putative class members because the contracts were executed in China, were to be performed in China, and the alleged fraud occurred in China; the evidence related to lending contracts, the

matter of 'justifiable and serious' concern for the trial court and peculiarly within its discretion." Windham v. Am. Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977) (citation omitted). It is clear from the history of this case that Plaintiffs cannot demonstrate that this action is manageable as a class action in the United States, especially considering the material evidence is located in China where U.S.-style discovery is illegal, making it impossible for this Court to manage the discovery process. In fact, Chinese law does not allow the taking of depositions for use in foreign proceedings in the manner permitted by American discovery rules, and "[p]articipation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants."[11] This Court is not inclined to seek the permission of the People's Republic of China as a tool for the manageability of a class action. Therefore, given the strong connection to China and the tenuous connection between Plaintiffs' claims and this jurisdiction, it would be neither desirable nor manageable to aggregate the claims here before this Court.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Motion for a Protective Order (DE 132); denies Plaintiffs' Motion to Compel (DE 142); and denies Plaintiffs' Motion to Certify Class (DE 156) for the reasons stated herein.

**IT IS SO ORDERED**.

June 16, 2023
Florence, South Carolina

Joseph Dawson, III
United States District Judge

---

alleged investments made pursuant to those contracts, and the class is located in China; Plaintiffs' witnesses are in China; the Chinese government is reportedly handling claims of investors in China, having taken over civil litigation in China; and the Chinese government has provided restitution to class members in China, having apparently seized the assets involved in the alleged fraudulent scheme, to be liquidated for the benefits of investors, which include all of the putative class members.

[11] See China – Taking Voluntary Depositions of Willing Witnesses, U.S. DEP'T OF STATE - TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last accessed June 14, 2023).